UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BONDEX INTERNATIONAL, INC., et al., ) | |
| ) | Case No. 1:03-CV-01322 |
| Plaintiffs, ) | |
| ) | JUDGE ANN ALDRICH |
| v. ) | |
| ) | Magistrate Judge Patricia A. Hemann |
| HARTFORD ACCIDENT AND INDEMNITY ) COMPANY, et al., ) | |
| ) | MEMORANDUM AND ORDER |
| Defendants. ) | |
| ) | |

Before the court is third-party defendant Colony Specialty Insurance Company's ("Colony") motion for summary judgment [Docket No. 190] regarding the third-party claims made against it by defendants/third-party plaintiffs Mt. McKinley Insurance Company ("McKinley"), Continental Casualty Company ("Continental"), Columbia Casualty Company ("Columbia"), Century Indemnity Company ("Century"), and Allstate Insurance Company ("Allstate"). For the following reasons, the court grants Colony's motion, enters judgment in favor of Colony on all third-party claims against it, and dismisses Colony from this action.

**I.     Background**

This case concerns insurance policies issued by McKinley, Continental, Columbia, Century and Allstate or their predecessors-in-interest to plaintiffs RPM, Inc. ("RPM"), Bondex International, Inc. ("Bondex") and Republic Powdered Metals, Inc. ("Republic") and whether those policies have been exhausted by claims filed against RPM, Bondex and Republic for asbestos-related personal injuries. The central issue raised in the main case is whether asbestos-related claims arising out of products manufactured by The Reardon Company ("Reardon") prior to Reardon's acquisition by what would become RPM are subject to coverage limits in insurance policies issued by the defendants. The

plaintiffs allege in their complaint that because claims arising out of materials manufactured by Reardon prior to its purchase are not claims arising out of materials manufactured "by named insured," the limits in the defendants' policies do not apply and plaintiffs are entitled to coverage without limit on claims arising out of materials manufactured by Reardon prior to its purchase.

The third-party complaints filed by Century, McKinley, Continental, Columbia and Allstate put at issue by Colony's motion for summary judgment all seek declaratory relief against Colony and contribution from Colony. Colony's predecessor-in-interest Cardinal Casualty Company ("Cardinal") issued a number of primary insurance policies covering asbestos-related claims against RPM, Bondex and Republic, but came to a settlement with RPM, Bondex and Republic regarding Colony's remaining coverage duties in February 2000.

The settlement agreement begins by explaining how the parties came to negotiate, by referencing the "various asbestos bodily injury claims" against RPM, Bondex, Republic and another affiliated company, Proko Industries, Inc. ("Proko") that is not involved in this action. Settlement Agreement ("Agreement"), at 2. Then, after establishing the amount that Cardinal paid in indemnity payments under the policies it had issued, the Agreement states that Cardinal shall provide a final amount of coverage, termed the "Coverage in Place." *Id.*, at 3. The Agreement then states the following:

> Cardinal shall have no duty or obligation to defend [RPM, Bondex, Republic and Proko] or to pay any defense costs on behalf of [RPM, Bondex, Republic and Proko]. Cardinal shall have no duty or obligation to indemnify or make indemnity payments on behalf of RPM, Republic, or Bondex under the Coverage in Place. Cardinal's obligation to make indemnity payments on behalf of Proko shall terminate upon Cardinal's payment . . . under the Coverage in Place.
> Other than [the Coverage in Place], Cardinal shall have no duty to defend, pay defense cost, indemnify, or make indemnity payments with regards to ***any claims*** including all product liability claims against any insured under the polices issued to RPM, Inc. by Cardinal Casualty Company.

-2-

*Id.* (emphasis added). The Agreement constituted a complete and total release for any and all claims, known and unknown, that RPM, Bondex or Republic had, might have had, or ever would have against Cardinal/Colony under the policies issued by Cardinal, including those for Cardinal/Colony's duty to provide coverage for any asbestos-related claims. *Id.*, at 3, 6. The settlement deemed all of aggregate limits of liability in the Cardinal-issued policies exhausted, and that Columbia would drop down and begin paying indemnity as a result of the "exhaustion" of the Cardinal policies under the Agreement. *Id.*, at 4, 6. In other words, the payments Cardinal made to RPM, Bondex, Republic and Proko created the desire to create the Agreement, but in the Agreement, RPM, Bondex, Republic and Proko completely released Cardinal from all claims arising out of the Cardinal-issued policies, not just those that created the desire for settlement.

Both McKinley's predecessor-in-interest and Columbia were parties to the Agreement. Century, McKinley, Continental, Columbia and Allstate, however, now argue that if claims arising out of Reardon-manufactured asbestos products are not subject to coverage limits in their policies, then those claims also are not subject to coverage limits in Colony's policies so that Colony must contribute to any costs Century, McKinley, Continental, Columbia and Allstate are required to pay RPM, Bondex and Republic as a result of the main action.

## II. Discussion

Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the

existence of a material dispute as provided in Rule 56(e):

> An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position. *See Celotex,* 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, this Court must view the evidence in a light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248. An issue is "genuine" if the evidence is such that a reasonable juror "could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether the evidence is "so one-sided that [the moving party] must prevail as a matter of law." *Id.* at 252. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In its motion for summary judgment, Colony argues that the third-party claims for contribution and declaratory relief are barred by the February 2000 Agreement with RPM, Bondex and Republic because of the complete release contained therein. The Agreement speaks for itself and the court finds that it unambiguously releases all claims that RPM, Bondex or Republic had, might have had, or ever

-4-

would have against Cardinal/Colony arising out of the Cardinal-issued policies. The material facts concerning this motion and the third-party claims implicated by it are undisputed, and the court may rule as a matter of law.

Colony cites the slip opinion of Magistrate Judge Hemann in *Gencorp, Inc. v. AIU Ins. Co.*, in support of its position that an excess insurer has no right of contribution from a primary insurer who has settled with the insured. No. 1:02-CV-1770 (N.D. Ohio July 23, 2003). Magistrate Judge Hemann cited a Third Circuit case in that opinion, which explains the rationale behind that rule. *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440 (3d Cir. 1996). The Third Circuit in *Koppers*, in answering a question of Pennsylvania law not yet addressed by that state's supreme court, predicted that the Pennsylvania Supreme Court would bar contribution actions by non-settling insurers against settling insurers and instead have trial courts consider the amount of the settlement in a set-off when determining the liability of non-settling insurers. 98 F.3d at 1452-53. The Third Circuit predicted that result for three reasons: (1) a lower Pennsylvania court had already reached the same result; (2) Pennsylvania's rule supporting the finality and encouragement of settlements would be undermined if contribution actions were permitted; and (3) the Pennsylvania Supreme Court had reached a nearly identical result in addressing the ability of non-settling tortfeasors to seek contribution against settling tortfeasors in a case of joint-and-several liability. *Id.* (citing *Charles v. Giant Eagle Mkts.*, 513 Pa. 474, 477, 522 A.2d 1, 2-3 (1987)).

As far as this court is able to determine, no Ohio court has addressed this question. And while Ohio law did contain a statute barring contribution actions by non-settling tortfeasors against settling tortfeasors in a case of joint-and-several liability, that statute has since been repealed for reasons unrelated to its content. OHIO REV. CODE § 2307.32 (repealed 2001). Ohio law does, however, contain

-5-

the same general rule supporting the finality and encouragement of settlements, even if upholding such a settlement creates a detriment to non-settling parties. *See, e.g., Krischbaum v. Dillon*, 58 Ohio St.3d 58, 69-70, 567 N.E.2d 1291, 1301-02 (1991) (holding that as long as there is no collusion or bad faith, a settlement will be upheld even if it is to the detriment of other, non-settling parties).  As neither McKinley nor Columbia, parties to the settlement agreement, have made allegations of collusion or bad faith, much less provided evidence to that end, the court must uphold the February 2000 settlement.

While Ohio law does not provide this court with as many reasons as the Third Circuit possessed in *Koppers* to bar contribution actions by non-settling insurers against settling insurers, the reasoning in *Koppers* applies with full force.  Allowing contribution actions by Century, McKinley, Continental, Columbia and Allstate undermines the finality of the settlement between Colony, RPM, Bondex, Republic, McKinley and Columbia.  And allowing contribution actions by those parties is not the only way for those parties to protect themselves if RPM, Bondex and Republic chose to settle their claims against Colony for less than the coverage limit in the Cardinal-issued policies. *See Koppers Co.*, 98 F.3d at 1452-53.  Century, McKinley, Continental, Columbia and Allstate are still protected, to the same degree they were before, by the terms of their insurance policy contracts with RPM, Bondex and Republic.  Century, McKinley, Continental, Columbia and Allstate are also able to assert that the settlement from Colony should reduce whatever award is made against them, to ensure that the risk of settling too low remains where it should - on RPM, Bondex and Republic. *Id.* at 1455.  Or, more importantly, if the limits of the Cardinal-issued policies would not have been exhausted for the same reasons that RPM, Bondex and Republic now argue that the defendants' insurance policies are not exhausted – if the amount Cardinal/Colony should have paid is unlimited, in the way that there are no limits to the amount that plaintiffs allege the defendants must indemnify RPM, Bondex and Republic

for Reardon-related claims – then the plaintiffs would have settled their claims against Cardinal/Colony for far less than they were worth and would accordingly bear that risk, and could conceivably owe defendants for the amounts they paid, that Cardinal/Colony should have paid, but which the plaintiffs negotiated away.

In opposing Colony's motion for summary judgment, McKinley makes several arguments. First, it argues that the scope of the Agreement does not explicitly bar McKinley or Columbia from seeking contribution, as the terms of the Agreement reach only those payments made by Cardinal/Colony by the time of the Agreement. This, however, is immaterial, because of the way in which the Agreement bars contribution against Colony. Put simply, it is not the terms of the Agreement referring to the relations between Cardinal/Colony and McKinley and Columbia that bars contribution; it is (a) the release of all claims between Cardinal/Colony and the *plaintiffs* in this case and (b) the policy underlying finality of settlements that combine to protect Colony. Through the Agreement, the plaintiffs in this case agreed to completely and totally release Cardinal/Colony from any future liability. The Agreement does unambiguously. To promote the finality of the settlement of claims between those two parties as explained in *Koppers*, contribution actions must be barred. The court does not rely upon what the Agreement does to McKinley or to Columbia in granting summary judgment to Colony; the court relies upon what the Agreement does as between the plaintiffs and Colony, and how *that* affects Colony's status vis-a-vis all other insurers.

The court also notes that the Agreement, as between Cardinal/Colony and the plaintiffs, releases *all* claims, regardless of their character. Thus, even if the Agreement came about because of claims that counted against the limits of liability in all of the insurers' respective policies, Cardinal/Colony and the plaintiffs agreed to a release that consciously went further than that. The parties to the Agreement could

-7-

have limited the claims-releasing language in the Agreement on page 3, but chose to use extremely broad language instead.

McKinley next asserts that the Agreement is ambiguous in some sense. However, as the court found above, the Agreement is unambiguous in its release of *all* claims of the plaintiffs against Cardinal/Colony arising out of the Cardinal-issued policies. Also, as explained above, the court does not rely upon the provisions of the Agreement directly affecting McKinley to grant Colony summary judgment. The court therefore rejects McKinley's claims that the Agreement is unenforceable because of ambiguity. In any case, only ambiguity in the Agreement's description and disposition of the relationship between *Cardinal/Colony* and *RPM, Bondex and Republic* would bear on Colony's motion for summary judgment. Similarly, alleged mutual mistakes or misrepresentations of material fact would only bear on Colony's motion for summary judgment insofar as they were mutual mistakes of material fact between Cardinal/Colony and RPM, Bondex and Republic or misrepresentations of material fact to Cardinal/Colony by RPM, Bondex and/or Republic. McKinley does not argue that any such mutual mistakes or misrepresentations exist that would prevent Colony from raising this Agreement as a full and complete bar to indemnification claims by RPM, Bondex and Republic; only those mutual mistakes or misrepresentations would prevent the finality of the Agreement from barring contribution by other insurers against Colony.

Finally, the same reasons that counsel against allowing contribution actions against Colony by other insurers also counsel against allowing equitable contribution actions against Colony on the same facts. The court finds that there is no reason to create an exception for equitable contribution to a policy that bars contribution actions, not because of their character, but because of their effect on the finality of settlement.

**III. Conclusion**

For the foregoing reasons, Colony's motion for summary judgment [Docket No. 190] is granted. Judgment is entered for Colony on all third-party claims against it, and Colony is dismissed from this action.[1] As Allstate's third-party complaint [Docket No. 139] only contained claims against Colony, that third-party complaint is dismissed in its entirety.

As all claims against Colony have been dismissed from this case, pursuant to FED. R. CIV. P. 54(b), the court directs entry of final judgment in favor of Colony alone. This order is final and appealable.

IT IS SO ORDERED.

    /s/Ann Aldrich
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated: February 1, 2007**

---

[1] The third-party claims against Colony are contained in Continenal and Columbia's Amended Third-Party Complaint [Docket No. 132], Century's Third-Party Complaint [Docket No. 61], McKinley's Third-Party Complaint [Docket No. 89], and Allstate's Third-Party Complaint [Docket No. 139].